Good morning, Your Honors. Vince Bronco, Federal Defenders, on behalf of Mr. Hernandez, I'll be attempting to reserve two minutes of rebuttal. Okay. This Court must reverse Mr. Hernandez's sentence because the District Court violated Rule 32 in two significant ways. First, it imposed sentence without a pre-sentence report and without explaining on the record why a pre-sentence report was unnecessary. Why shouldn't we invoke the doctrine of invited error? I'm actually surprised you're making the argument, Counsel, because as I read the record, your client appeared before Magistrate Judge Ruth Montenegro in El Centro the day before the sentencing and expressly waived the preparation of a pre-sentence report because he wanted to be sentenced immediately. And now you're declaring that to be reversible error. To me, that's a paradigmatic example of invited error. The problem with that is even if a defendant attempts to waive a pre-sentence report, Rule 32 still requires the sentencing judge, the District Court, to make certain findings. And those findings are that a pre-sentence report is unnecessary. But the District Court made the sentence essentially based on his criminal history, which is incorporated in the record in a one-page summary that I assume was prepared by pretrial services when your client was arrested. Is that where that document came from? No, Your Honor. That document came from the government. And that's exactly why a pre-sentence report was necessary here, because the only information from the government or the criminal history was the focus, whereas a pre-sentence report— That information is accurate? Pardon me? Is that what you're saying? Because it looked to me like the District Judge looked at that. It's a pretty extensive criminal history. This was his fourth illegal reentry. And what else does the District Court need if the basis of the sentence imposed of 30 months was recidivism? I mean, you can see that. You can see that off the one-page summary of his criminal history. It didn't have the mitigating evidence that a pre-sentence report would have provided, and that is the personal history characteristics. What mitigating evidence would you offer to four convictions for illegal reentry? I mean, this guy basically has made a life history of illegally entering the United States, and this is his fourth criminal conviction. Particularly a document, what Mr. Hernandez did the last 10 years of his life, because I agree, that criminal history is pretty bad, but it starts back in the 1980s, and it shows for 30 years that, yes, he was in and out of custody in the United States. I guess I'm having a little trouble, like Judge Tallman, in the sense that he comes in, your client comes in, looks like he has a chance for credit for time served, says, okay, let's hurry up and grab that, because I know I've got a long record. They put it over a day. Then the judge comes in and says, hmm, I'm really not liking this too much, and the defendant still doesn't try to backtrack off that and say, well, then I better get a pre-sentence report. And then don't they put it over another day before this even happens and comes back again? And so, you know, your argument would have been better if the sentencing had occurred on that first day with Judge Benitez when he said, I'm not really liking this too much, but we'll put it over a day, and then they still don't pull the plug. You know, he still had a chance to say, oh, well, now that I know that I'm not going to get credit for time served, I think maybe I should get a report. And your client never pulls the plug on this, and it gets put over twice. And now you want us to say that somehow that pre-sentence report had to be ordered. Yes, but what I'm saying is that- I mean, your client was the bat in the initial not having a pre-sentence report, not the ball. Correct. And all, my client had perfectly good reasons for waiving the pre-sentence report when he appeared in front of the magistrate judge. The problem here is- Right, let's hurry up and hope that no one finds out anything more about me. But the problem is- Yes. The district court never intended to impose a time served sentence, and that's where his obligation under Rule 32 kicked in to make it by me that a pre-sentence report wasn't available. And that's why the court should apply just plain error, not invited error. Well, but didn't he have an attorney there? I mean, was the attorney just a potted plant there? I mean, and then they put it over one more day. I mean, I think Judge Benitez, if Sam, like, hey, I can't go along with this. They certainly could have been within their rights. Well, now that I know that I can't get credit for time served, let's just take a little longer on this. I'll stay in custody, get a pre-sentence report, and come back and hope I can convince you otherwise. But they just put it over one day. Your Honor, my time's quickly running out. May I move to the second violation of Rule 42? No, I think you need to. That's why when it's your time, it's our time, too. So why didn't the attorney do that? The attorney, there was no excuse. But that's what plain error is for, that we have a higher standard to prove that it was prejudicial in this case, that it switched the burdens. We didn't do that. But it's plain error, not invited error. Moving to the second issue, and that is that the district court violated Rule 32I1C by relying on materials that were not disclosed to Mr. Hernandez. Okay, let's talk about that. Wasn't your client the one that brought the whole COVID thing up in the first place? Because your client didn't want to go to, once again, your client is the bat, not the ball, and started the whole conversation about COVID. And everyone, we don't have to go that far back to know that we were all talking about COVID every day. So your client started the whole thing, and then when he didn't get what he wanted, now some of you here wants to say, well, the judge should have never talked about COVID. So go. We're not saying the judge should have never talked about COVID. What the judge should have done, if the judge was doing these independent searches and found contrary reports and studies, the judge should have provided those to defense counsel so defense counsel could respond to them. That is how Rule 32 works. This is an adversarial system where we are providing the materials so we can comment on them. And that's what we wanted. Not just the judge to just accept it, but if the judge is having questions, give us an opportunity to respond to the materials that the judge is relying on. Well, Mr. Brunko, doesn't it require, I mean, I understand your point, and, you know, I'm in the courtroom every day sentencing people, and I understand the concept of making sure that counsel have available to them what it is that I'm relying on when I impose a sentence. Now here, Judge Benitez, and I'm looking at pages 110 to 111 of your excerpt's record, and this is the transcript of the second sentencing proceeding, and he makes it very clear that he is not imposing sentence as a result of any discussion he had regarding COVID-19. And then he meticulously goes through the 3553A factors that apply. And as you know, that's the guts of what we need to do. And he talks about deterrence at the top of 111. Number two, he talks about respect for the law. Number three, he talks about protection to the public. And as Judge Callahan indicated earlier, he talks about the fact that page 110, the fact that your client had a considerable and serious criminal history. So if he didn't rely on these things in imposing sentence and adhere to the factors in 3553A, why wouldn't we affirm this sentence? Because the judge also said, and I believe on Excerpt of Record 110, in response to the COVID articles, that I raised that because you raised it in your memorandum. So I was addressing what you raised in your memorandum. So the judge was doing its independent research to negate a mitigation argument that we made on behalf of Mr. Hernandez. And I wouldn't say that it's meticulous going through the 3553A factors. That's all that Your Honor just cited. It was only really referencing three main factors, all referencing criminal history, meaning it was not looking at the full picture of the history of characteristics of Mr. Hernandez. And it's totally missing the fact that in the ten years prior to this offense, Mr. Hernandez only had one misdemeanor prior sentence, and that was for six months. And in those ten years, he completely remained crime-free and only had that one incident. So you only have ten seconds. May I reserve some time for rebuttal? I'll give you, because I'm such a nice person, ha-ha. I'll give you two minutes for rebuttal. We had a lot of questions of you, okay? Thank you very much. All right, thanks. Okay, we'll go to the government's argument. Good morning. Thank you, Your Honor. Good morning, and may it please the Court. Zach Howe on behalf of the United States. Hernandez waived any claims relating to the PSR by explicitly waiving the PSR in the District Court. The record is very clear on this. Page 21 and 22 of the record, the Court says, quote, you have the right to have the Probation Department prepare a PSR, which is a report that a judge uses in sentencing you. Hernandez then waived that right because he wanted to obtain sentencing the next day. Mr. Howe, why didn't you argue invited error? Well, Your Honor, we actually do cite the Harris case from the 11th Circuit. You cite the case. It's within the parenthetical, but you don't make an invited error argument. The only real reason, Your Honor, is because the Shahada case is dispositive on-point authority from the 9th Circuit, dealing with very similar facts where the Court said the argument was waived. So I think whether you're looking at it through the lens of waiver or invited error, the conclusion here is the same. By expressly giving up the right to a PSR, Hernandez was given the right to challenge the failure to prepare one here in this appeal, as well as the right to challenge any explanation, because, of course, that requirement is only designed to protect the right to a PSR. So, again, I think Shahada is dispositive on this point, and the Court doesn't need to reach the merits of this claim. Counsel, can you help me with a practical concern? It was the one that Judge Menendez raised at the very beginning of the sentencing on day one, and that is, why did the U.S. Attorney's Office make a plea offer this low to an individual with this kind of a record? Is it just because we have such a volume of these cases in the Southern District of California that we're just trying to move people through the system as fast as we can, even though we don't know very much about them when we cut these deals? Is that what happened? Your Honor, I don't have a perfect answer for you. I don't know the exact rationale for why this case was put out the way it was. I do believe it had something to do with the fact that there was sort of a huge inrush of cases, at least given the resources that were available during the onset of COVID-19. So I know there were very favorable offers being given out because COVID had just set in. I don't know if that offer would have been extended during other circumstances. So I think that had something to do with it. So it was a combination of the outbreak of COVID, plus, as I recall at the time, there was a large number of illegal entrants that were massing at the border, and we were rushing a lot of additional Border Patrol resources and so on to try and meet the flow of illegal aliens entering the country. So, again, that's my general understanding of how things were going in the office. I can't speak specifically to the exact charging decision in this case, but I imagine that's probably what was behind the rationale here. Okay. Mr. Howell, Judge Benitez, in the course of the second substantive sentencing in this case, he talks about past cases of illegal reentry by other aliens. He talks about COVID-19, and he talks about recidivism. And I think probably the most problematic aspect of these ruminations that Judge Benitez engaged in is the COVID-19 because he's referring to some sort of a study. And as I pointed out in my questioning to Mr. Brunko, he also clearly was thinking about and addressed and seemed to center his sentencing on the 3553A factors. How do we know that Judge Benitez didn't take into consideration these other areas outside of the 3553A factors in arriving at this sentence, which was 15 times longer than what everybody thought this defendant was going to get? So, I'm happy to go through each one of the areas that you mentioned, Your Honor, and I'll begin with the COVID-19 cases. The short answer to all of the different pieces of evidence that Hernandez is pointing to is that the court expressedly and repeatedly said it wasn't relying on those issues, and so that's how you know. But let me start with the COVID-19 cases specifically. It's true, the court cited these two outside articles, but then it says at page 101 of the record, I'm not taking that into account. And then it says at page 110 of the record, I didn't impose sentence because of that. And then it says I thought I made it pretty clear. And then it goes through the factors you mentioned, criminal history, deterrence, respect for the law, and protection of the public. The court then actually makes clear that it has, in fact, given Hernandez quite a substantial benefit because of COVID, even though it doesn't necessarily accept all of the claims in his declaration. So, if you look at page 106 of the record, the court says, its normal sentencing practice is to impose a sentence higher than the ones that fail to deter the defendant from committing the same offense in the past. And, of course, here Hernandez has a 92-month sentence and a 63-month sentence for illegal reentry. Yet the court imposes a 30-month sentence far lower, and the explanation it gives for why it's doing so is, quote, exceptional circumstances, quote, COVID-19 issues, and, quote, hardships. So, it's clear that the court does, in fact, give him quite a bit of credit for this mitigation argument. So, given the credit that the court gave him, given its explicit statements that it's not relying on the articles that it cited, I don't think it's plausible to conclude that the court was, in fact, relying on those outside articles, and, therefore, the court didn't have to disclose them under Rule 32 here. Let me also address the other points you made. So, the court did mention prior cases that it had decided in the past. Now, that's not traditionally what we would think of as outside information. We know there's no study or article to point to, and the cases we cite at page 21 and 22 of our briefs say we want sentencing judges to rely on their past experience. But even if we look at that as outside information, the only point it went to was Hernandez's whereabouts over the past few years before the current offense, and the court expressly says it's not relying on his whereabouts for sentencing. It says at page 98, quote, it doesn't matter. It's not really that important. So, again, no notice was required here because the court's just not relying on that information. And finally, with respect to those cases, I'll note that the court is citing them for a common-sense, well-known proposition. We cite about a dozen cases for the proposition that individuals will often come into the country illegally and they might return to visit family or for other purposes. Hernandez doesn't dispute that that's a well-known proposition, and under the where case from this court, any error is harmless when the court fails to disclose a study that only stands for something that the defendant should already know anyway. Judge Benitez had been the magistrate judge in El Centro before he was elevated to the district court, isn't that right? That's correct. I mean, he's been handling these cases for a long time. That is correct, Your Honor. The final point I'll make on the criminal history issue, I think that was the final area that the appellant was saying was not disclosed. That is apparent on the very face of the guidelines. The introductory commentary to Chapter 4 expressly cites studies showing a link between criminal history and recidivism. And, of course, criminal history is the universal sentencing enhancer in every case because it's used to calculate guidelines. So it should not have come as a surprise to Hernandez that the court believed there was a connection between criminal history and recidivism. And again, to the extent there was any outside article to disclose, any error was harmless because that's a well-known common proposition. Mr. Howell, just out of curiosity, has Mr. Hernandez-Garcia discharged his custodial sentence? I believe he gets out in April of next year, if I have it right, and then will begin a three-year period of supervised release, which will be suspended because he'll be deported. So he has just a little bit of time left. If there are no other questions, then I'd ask that the court adjourn, and I have the remainder of my time. We're off to your third argument. Don't leave yet. I gave your friend for the appellant two minutes, so don't leave. All right. Thank you, Mr. Brunkow. You have two minutes. Yes, I'd like to make a few brief points. First, to answer Judge Coleman's case of where did this offer come from, I'd just like to remind the court that the guideline range for Mr. Hernandez was two to eight months. So the government's time served was only a few days less because of COVID. But that was because of the age of the prior convictions, right, Mr. Brunkow? Exactly. It's because Mr. Hernandez had such few criminal history points over the last 10 to 15 years of why it was such a low time now. But is there anything improper in a sentencing judge looking at the entire criminal history, particularly recognizing that this is the fourth illegal reentry that this defendant has been convicted of, looking at the last sentence that was imposed on him for illegal reentry and saying, look, it's my general practice to give a higher sentence where it's clear to me that that has not deterred him from committing the same offense for the fourth time? Well, if the court were to look at the last sentence for illegal entry, that was six months, and it was five years before this. So the six-month sentence— No, that wasn't my question. Judge Coleman's question was, is there anything inappropriate for a sentencing judge to look at a defendant's entire criminal history, whether it's yours or not? It can use that as a variance, but if the district court is also taking into account study after study to say the main indicator, the greatest indicator, is just simply criminal history, no, that's improper. Because if we had those studies, we could provide contrary information, such as, like, the age of Mr. Hernandez, who's in his 50s, could be the biggest factor when he's 50 years old. Counsel, you still haven't answered my question. My question was, I thought, pretty narrowly tailored. And that is, the sentencing judge looks at the fact that this is the fourth time that this defendant has been convicted of illegal reentry. And then he looks at what he got the last time, which was six months, and says, look, just from a deterrence standpoint, it's clear to me that six months was not enough to deter this guy. So I'm going to sentence him higher than six months because of the fact that that sentence was not a deterrence. Here he is again committing the same offense for the fourth time. Is that improper? Maybe, maybe not. But if the sentencing calculus is embedded, if there's embedded within that, Rule 32 errors, that's improper. So in the abstract... That assumes that I accept your predicate. Yeah, I understand that. And let's just sort of think of my hypothetical, that there were no Rule 32 violations here. Is there anything wrong with a judge saying, look, it's clear to me that six months was not enough to get this defendant's attention. I'm going to give him more than six months because of the fact that this is the fourth time that he's done it. That would be a different record. We may be arguing the extent of the variance at that point since the guideline range was two to eight months. But isn't that what Judge Benitez said when he said it's my general, I can't remember the page type, but it's my general policy to look at what the prior sentence was, and I don't give lower sentences to recidivists who come before me to be sentenced on the same chart. I guess the point I'm trying to make, Your Honor, is yes, Judge Benitez's policy, but that doesn't allow him to then, or this court, to excuse his violations of Rule 32 also. Okay. I understand your point. Okay. Thank you. All right. Thank you. We've taken you, so you've got four minutes on rebuttal, two of which we took. But anyway, thank you both for your arguments in this matter. And I believe that completes our calendar for today and will put us in recess, this court, until tomorrow morning. And I think the calendar I'm on tomorrow morning starts at 11. So if the judges stay on, we'll go to the roving room and counsel for the government off to your third argument. Thank you, Your Honor.  Thank you, Your Honor.
judges: Tallman, Callahan, Christensen